NO. 12-00-00270-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 

DAVID GRANTHAM,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS







OPINION
 

 David Grantham appeals his jury conviction for unlawful possession of a firearm by a felon. 
After finding him guilty, the jury assessed punishment at sixty years of imprisonment. In four issues,
Appellant contends that the evidence is insufficient to support the conviction and that he received
ineffective assistance of counsel. We affirm.


Background

State's Evidence

 A fingerprint examiner testified, verifying the fact that Appellant was the man convicted of
burglary of a habitation on October 9, 1991. Appellant's parole officer testified that, on December
23, 1999, he was released from prison on parole for the October 9, 1991 burglary of a habitation. 
He was to remain on parole until November 12, 2006.

 Detective Anthony Dana, of the Smith County Sheriff's Department, explained that
Appellant became known to him during his investigation of some burglaries in Smith County. He
was also investigating Clifford Myers, Jimmy Allen, and Billy Johnson. Both Appellant and
Johnson had outstanding arrest warrants. On January 5, 2000, Detective Dana and other officers set
up surveillance at a house in a wooded area on Highway 155 where the burglary suspects were
residing. They continued to watch the house on January 6. When they decided to enter the house,
they knocked on the door and loudly identified themselves for ten to fifteen minutes. The door was
standing slightly open, but no one answered. The officers went in and immediately arrested Johnson,
who was in the kitchen. Appellant, who was in the bathroom, resisted arrest, telling the officers to
get out of his house because they had no business there. Detective Dana saw audio and video
surveillance equipment both inside and outside the residence. He explained that there were security
cameras mounted on the outside of the house that were connected to a television inside the house. 
Also, there were motion detectors on each side of the driveway. They found miscellaneous items
such as police scanners, walkie-talkies, and CB radios. He saw a shotgun in plain view on the floor
in front of the couch. A shoulder holster and a bag of ammunition were found close to Appellant. 
Additionally, they found a large quantity of ammunition in the house.

 Don Burleson testified that he lives on County Road 3147 and that Jimmy Allen is his
neighbor. Burleson is retired and spends most of his time at home. He explained that during late
fall 1999 and January 2000, he heard gunshots at all hours of the day and night, mostly in the "wee
hours of the morning." The noise came from Allen's backyard where there were flood lights. He
heard gunshots there two or three times a week for between ten minutes and two hours at a time. 
Burleson called the sheriff's department to complain of the noise. He knew of four males staying
at Allen's, including Appellant. Burleson specifically testified that he saw Appellant behind Allen's
house shooting guns "in the last three months there off and on" up to December 1999 or January
2000. On cross-examination, Burleson said the shooting stopped after or around December when
they moved and were arrested. He was not certain of the date, although it was somewhere around
Christmas, but he stated that the day they moved out "the shooting quit."

 Jimmy Allen testified, explaining that he had a home on County Road 3147. In the late fall
of 1999, Appellant and his girlfriend, Rainey Rounsavall, moved in with him. He testified that
Appellant brought a shotgun to his house that fall, in October, November, or December. Usually,
the gun was in Appellant's bedroom when he was home and he carried it with him when he left the
house. Appellant also had a pistol like the one pictured in State's Exhibit 21. He had a shoulder
holster and he carried the pistol with him during the time he lived with Allen. Allen first saw
Appellant with that pistol and a .22 revolver around the middle of December 1999. Appellant shot
the .22 in Allen's backyard, aiming at a target on plywood. Allen also stated that Appellant shot the
shotgun up in the trees and in the woods behind his house all the time in the fall of 1999. Moreover,
toward the end of December, because Allen had yelled at Rounsavall for leaving her dog in the house
for an extended period of time, Appellant had threatened Allen by putting a gun under Allen's chin. 
 Allen testified that neighbors had complained about gunfire at his house. He observed
Appellant and Billy Johnson fire weapons but he did not shoot any guns himself. He saw Appellant
in possession of three different handguns and a shotgun. He said Appellant had a gun on him most
of the time, in a green shoulder holster. After Appellant threatened him in late December, Allen
"told him that he had to get his people and get all of his stuff out of the house." He did not call the
police to report the threat "because there was a lot of stolen property" at his house.

 On cross-examination, Allen explained that Clifford Myers, who was his ex-wife's nephew,
had introduced him to Appellant. Myers also lived at Allen's house part of the time. Johnson and
Rounsavall lived there during the same time period. On December 27, Allen talked to Detective
Gerald Caldwell, who asked him if Appellant had brought any stolen guns onto Allen's property. 
Allen told him no because he thought the guns belonged to Appellant. He admitted that he had
initially lied to law enforcement officers, denying any knowledge of stolen property, but explained
he wanted to shield all involved because Appellant had threatened his life. Allen stated that he did
not own any guns, Johnson had some guns at his house, and Appellant brought the shotgun to
Allen's house. He last saw Appellant on December 26, 1999, and there have been no guns at Allen's
house since Appellant left.

 Detective Gerald Caldwell, with the Smith County Sheriff's Department, was involved in
burglary and theft investigations. On January 6, 2000, he went to a residence on Highway 155 to
serve an arrest warrant on Appellant. He explained that Appellant was arrested in a bathroom a few
feet from a gun locker. Additionally, he found a loaded pistol in a closet area a couple of feet from
where Appellant was arrested. He testified that Appellant was fully dressed and not wet, resisted
arrest, gave a false name, and threatened to kill the arresting officers. On cross-examination,
Detective Caldwell said he did not see Appellant in possession of a firearm. But on redirect
examination, he clarified that he did see Appellant a couple of feet from a gun.


Defense's Evidence

 Billy Johnson testified on Appellant's behalf. He was arrested on January 6, 2000 with
Appellant, who he said was in the shower when the officers arrived. Johnson was charged with two
burglaries, which, he said, Appellant was not involved in. He testified that Rounsavall usually kept
the guns in a safe but when the officers arrived, the shotgun was under the couch. He did not know
where the pistol was, although Rounsavall usually "carried it to work or something." He explained
that Cliff Myers brought the guns to Allen's house about two or three weeks before Christmas. He
testified that Rounsavall was living in two different places and Appellant lived at Allen's house for
only "a little bit, and then he went to Fort Worth five days out of the week." He and Rounsavall
moved out of Allen's house on December 24. He explained that Appellant, who did not live there
and stayed there only a night or two, was not there at the time he moved out. Johnson testified that
he never saw the guns in Appellant's possession and he never saw Appellant shoot a gun. He further
testified that his attorney told him that if he would testify against Appellant he would get ten year
sentences in his burglary cases instead of twenty. He said he explained to his attorney that he could
not do that because he never saw Appellant with guns or in control of guns. He rejected the offer
and told his attorney, "I can't lie on this man." He was sentenced to twenty years of imprisonment
for each of the burglary cases.

 On cross-examination, Johnson explained that his attorney told him to lie to the jury and he 
would get a better deal. While he understands that there are no plea bargains in Judge Kent's court,
he said the district attorney's office could plea bargain on his behalf. He then reiterated his earlier
testimony that his attorney said if he would change his testimony or lie on the witness stand he would
receive fewer years than if he told the truth. He stated that Appellant is his second cousin and he has
known him all his life. Johnson testified that he had never seen Appellant with a gun in his hand and
had never seen him fire a gun. He admitted to lying to law enforcement about his involvement in
burglaries. He explained that he did not have a place to stay and sometimes Appellant would help
him out by letting him stay at the house on Highway 155. He stated that Appellant did not live in
that house but he would ask permission from Rounsavall. He said that Appellant was in the shower
when the officers arrived and his hair was wet. He never saw anyone fire guns at Allen's house. He
explained that the surveillance equipment was for Rounsavall's safety, "because of her ex-old man." 
He spent ten to fourteen days at the house on Highway 155 while Appellant was there only one or
two nights. As far as he knew, that house was rented by Rounsavall. Johnson agreed that he had
previously admitted in a judicial proceeding to being a felon in possession of a firearm on January
6, 2000.

 On redirect, Johnson explained that Rounsavall was in the hospital for about a week,
beginning sometime after they moved to the house on Highway 155. He reiterated that the shotgun
was kept under the couch and the handgun was kept in a safe.

 Clifford Myers testified that he has known Appellant since high school and that Allen is his
uncle by marriage. He said he never lived at Allen's house, but did stay there a few times. He
denied ever bringing guns to Allen's house. He said he did see the shotgun at Allen's house but
never saw the handgun. He also said he never saw Appellant with a gun. He explained that he did
shoot guns at Allen's house but, when he did, Appellant would get mad or leave because he was not
allowed to be around guns.

 On cross-examination, Myers testified that Rounsavall would put the guns in her room. He
said Appellant was not living at the house on Highway 155. He said that Rounsavall has a handgun
and that Appellant did not shoot it. He did not see who took the shotgun to Allen's house; it was just
out there. He said the shotgun sat in a corner in the living room. Then he said they usually kept it
in a closet where the washer and dryer was; then he said he did not know. He never saw anyone
shoot the shotgun. He denied being afraid of Appellant. He told Detective Caldwell that Appellant
did not want to go back to prison due to someone else's carelessness. He then said Appellant did
not know Johnson and Myers were stealing. He also testified that Rounsavall carried a gun and large
sums of money.

State's Rebuttal Evidence

 In rebuttal, the State recalled Detective Caldwell. He testified that Myers told him he would
talk about anyone but Appellant because Myers was afraid Appellant might kill him. He said that
Myers told him Appellant would be at the Highway 155 address and would probably have the
security system on and "booby traps" set. Myers also said Appellant always carried a gun and that
Appellant had told Myers he was not going back to jail. Detective Caldwell also testified that
Johnson told him the house on Highway 155 belonged to Appellant and his girlfriend. On cross-examination, Detective Caldwell explained that the statements from Myers regarding Appellant's
threat and about his possession of guns were not included in Myers' written statement of December
24, 1999 because these statements were made on January 4, 2000.

 Detective Dana was also called in rebuttal. He testified that there was surveillance set up at
the house on Highway 155. He was present when Myers said Appellant liked the location on 155
because it was secluded and could not easily be seen by other residences. Myers told them that
Appellant would most likely have some type of security to warn him of approaching vehicles or
persons. Further, he testified that Myers said Appellant is known to carry a handgun or would have
it close by.

 Finally, the State called William Wright, a lawyer representing Johnson. He testified that an
assistant district attorney approached him about whether Johnson desired to testify in the case against
Appellant, but no deal was offered because there are no plea bargains in Judge Kent's court. He
stated that Johnson said he never saw Appellant with a gun and he would not testify against him. 
He also stated that no one from the district attorney's office attempted to have him tell Johnson to
change his testimony or lie. The district attorney's office never indicated that if Johnson would lie
or perjure himself, it would be to his benefit. The district attorney's office did indicate that if
Johnson chose to cooperate in the prosecution of other cases, that could be taken into consideration
when the district attorney argues for punishment. He reiterated that there was no deal in Johnson's
case. On cross-examination he stated that the prosecutor would have recommended ten years if
Johnson had testified for the State. 


Legal Sufficiency

 In his first issue, Appellant asserts the evidence is legally insufficient to support his
conviction because the State failed to prove he had actual care, custody, control, or management of
either of the firearms found in the house at the time of Appellant's arrest. He further asserts that the
State presented no evidence that he acted intentionally with respect to the nature of his conduct or
that it was his conscious objective or desire to possess the guns. In his third issue, Appellant asserts
the trial court erred in denying his motion for instructed verdict because the evidence was insufficient
as a matter of law to prove the allegations alleged in the indictment beyond a reasonable doubt. In
his motion, he argued that there is no evidence that on January 6, 2000, he possessed a gun and there
is no evidence that the weapons were capable of being fired.

 The standard for reviewing the legal sufficiency of the evidence is whether, viewing the
evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found
beyond a reasonable doubt the essential elements of the offense charged. Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The trier of fact is the sole judge of
the weight and credibility of the witnesses and may believe or disbelieve any part of any witness's
testimony. Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). The jury is entitled to
draw reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex.
App.- Corpus Christi 1988, pet. ref'd). A complaint about the denial of a motion for directed verdict
is an attack upon the sufficiency of the evidence to sustain the conviction. McDuff v. State, 939
S.W.2d 607, 613 (Tex. Crim. App. 1997).

 To establish unlawful possession of a firearm by a felon, the State must show the accused
was previously convicted of a felony offense and possessed a firearm after the conviction and before
the fifth anniversary of his release from confinement or from supervision under community
supervision, parole, or mandatory supervision, whichever is later. Tex. Pen. Code Ann. §
46.04(a)(1) (Vernon Supp. 2003). Possession is a voluntary act if the possessor knowingly obtains
or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit
him to terminate his control. Tex. Pen. Code Ann. § 6.01(b) (Vernon 1994). As to the element of
possession, the State must show the accused knew of the firearm's existence and that he exercised
actual care, custody, control, or management over it. See Ramirez v. State, 897 S.W.2d 428, 436
(Tex. App.- El Paso 1995, no pet.). The evidence used to satisfy these elements may be direct or
circumstantial. See Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). When the
firearm is not found on the accused's person or is not in the accused's exclusive possession,
additional facts must affirmatively link the accused to the contraband. Nguyen v. State, 54 S.W.3d
49, 53 (Tex. App.- Texarkana 2001, pet. ref'd).

 Appellant focuses his argument on the two weapons found in the house on Highway 155 at
the time of his arrest on January 6, 2000. Those weapons were not found on his person and several
other people had access to the house. Accordingly, the evidence must affirmatively link Appellant
to the firearms found at the house if the conviction rests on his possession of those weapons. Id. 
However, we need not address that question.

 The indictment alleged that the offense occurred "on or about the 6th day of January, 2000." 
The State is not bound by the "on or about" date alleged in the indictment. Walker v. State, 4
S.W.3d 98, 104 (Tex. App.- Waco 1999, pet. ref'd). The State could prove a date other than the date
alleged in the indictment where, as here, the date is anterior to the presentment of the indictment and
within the offense's statutory limitation period. Id. 

 Jimmy Allen testified that Appellant brought a shotgun to his house in October, November,
or December of 1999 and that Appellant usually carried a gun in a shoulder holster. Allen said that
Appellant frequently shot at targets and trees in his backyard in the fall of 1999. He saw Appellant
in possession of three different handguns and a shotgun while Appellant lived in his house. Don
Burleson testified that he saw Appellant shooting guns at Allen's house in the latter part of 1999, up
to December 1999 or January 2000. He then said that Appellant and others staying at Allen's house
moved out around Christmas and the shooting stopped. Accordingly, the State presented eyewitness
testimony from two individuals who saw Appellant possessing and shooting guns in the three months
immediately prior to the date alleged in the indictment. The fact that Appellant intended to possess
the firearms can be inferred from his acts. See McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim.
App. 1989) (op. on reh'g). Contrary to Appellant's argument, the State need not prove the weapons
were capable of being fired. The law does not incorporate such a requirement. Thomas v. State, 36
S.W.3d 709, 711 (Tex. App.- Houston [1st Dist.] 2001, pet. ref'd). We conclude the evidence is
legally sufficient to support the conviction and the trial court did not err in denying Appellant's
motion for instructed verdict. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; McDuff, 939 S.W.2d
at 613. We overrule Appellant's first and third issues.


Factual Sufficiency

 In his second issue, Appellant asserts the evidence is factually insufficient to support his
conviction. He complains that the record does not show he intentionally or knowingly possessed a
firearm because one weapon was found in a closet and another was found in a different room than
Appellant was in when he was arrested. Further, the weapons were not fingerprinted or even placed
into evidence at trial.

 When reviewing the factual sufficiency of the evidence we consider whether a neutral review
of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). We set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996). In conducting this analysis, our duty is to examine the trier of
fact's weighing of the evidence. Johnson, 23 S.W.3d at 7. We consider all of the evidence in the
record related to an appellant's sufficiency challenge, comparing the weight of the evidence that
tends to prove guilt with the evidence that tends to disprove it. See id. However, because the jury
is the sole judge of the facts, we must give deference to jury findings. Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997). What weight to give contradictory testimonial evidence is within
the sole province of the jury because it turns on an evaluation of credibility and demeanor. Id. at
408-09. The jury may choose to believe some testimony and disbelieve other testimony. Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

 Again, Appellant would have us consider only the evidence of the weapons found in the
house on Highway 155 on January 6, 2000. As explained above, both Burleson and Allen testified
that they saw Appellant in possession of firearms during the three month period immediately
preceding January 6, 2000. Additionally, the jury heard evidence tending to disprove guilt. Johnson
testified that he had never seen Appellant in possession of any guns or shooting any guns and that
Myers brought the guns to Allen's house. The jury was entitled to determine that Johnson lacked
credibility and reject this testimony. Cain, 958 S.W.2d at 407. Myers also testified that he had
never seen Appellant with a gun. Again, the jury could reject this testimony. Id. In rebuttal,
Detective Caldwell testified that Myers had told him that Appellant always carried a gun. Detective
Dana also testified that Myers said Appellant is known to carry a handgun or have it close by. 
Although defense witnesses presented testimony in direct conflict with the State's witnesses, we give
deference to jury findings. Id. Reviewing all the evidence, we cannot say that proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or that the proof of guilt is
greatly outweighed by contrary proof. Johnson, 23 S.W.3d at 11. The jury's verdict is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis, 922
S.W.2d at 129. We overrule Appellant's second issue.


Ineffective Assistance of Counsel

 In his fourth issue, Appellant asserts the trial court erred in failing to grant his motion for new
trial which was based on a complaint of ineffectiveness of trial counsel. He contends that his trial
counsel exhibited an actual conflict of interest when he advised Rainey Rounsavall, a witness
favorable to the defense, to invoke her right to remain silent. He also claims that his attorney's
failure to call as a witness the owner of the house on Highway 155 constitutes ineffective assistance. 
Further, he seems to complain that counsel should have called as a witness a detective who could
testify that one of the guns in the house was stolen. Finally, he asserts that Rounsavall was
threatened with prosecution if she testified for him.

 We review the denial of Appellant's motion for new trial for abuse of discretion. Melancon
v. State, 66 S.W.3d 375, 378 n.3 (Tex. App.- Houston [14th Dist.] 2001, pet. ref'd) (op. on reh'g). 
 The United States Supreme Court has established a two-part test, also adopted by Texas courts, to
determine whether the representation of counsel was effective. The defendant must show that (1)
counsel's representation fell below an objective standard of reasonableness, and (2) there is a
reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings
would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064,
80 L. Ed. 2d 674, 693 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). 
Ordinarily, absent a showing of both prongs of the Strickland test, this Court cannot conclude that
a defendant's conviction resulted from a breakdown in the adversarial process such that it rendered
the result unreliable. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. However, certain claims of
ineffective assistance of counsel involving conflicts of interest are controlled by Cuyler v. Sullivan,
446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). 

 Under Cuyler, a defendant demonstrates a violation of his right to reasonably effective
assistance of counsel based on a conflict of interest if he can show that his counsel was burdened by
an actual conflict of interest and the conflict had an adverse effect on specific instances of counsel's
performance. Id., 446 U.S. at 348-50, 100 S. Ct. at 1718-19. An actual conflict of interest exists
if counsel is required to make a choice between advancing a client's interest in a fair trial or
advancing other interests to the client's detriment. Monreal v. State, 947 S.W.2d 559, 564 (Tex.
Crim. App. 1997). Until a defendant shows his counsel actively represented conflicting interests,
he has not established the constitutional predicate for his claim of ineffective assistance. Cuyler, 446
U.S. at 349-50, 100 S. Ct. at 1719. But if an appellant shows that a conflict of interest actually
adversely affected the adequacy of his counsel's representation, prejudice is presumed. Id. 

 Initially, we must review the record of the hearing on Appellant's motion for new trial to
determine whether his trial counsel was burdened by an actual conflict of interest as Appellant
asserts. Counsel explained that he had planned to call Rounsavall to testify that she had rented the
house where Appellant was arrested. Counsel considered this to be exculpatory evidence. He
testified that, before she took the stand, the prosecutor told him she would be prosecuted for theft
of the stolen items in her house if she testified that it was her house. Counsel then told Rounsavall
that she would be prosecuted if she testified; therefore, "it was risky to testify." Although he said
he could not remember exactly what he told her, he testified that he did tell her that in his opinion
it was in her best interest not to testify. On cross-examination, counsel specifically said it was not
trial strategy for Rounsavall not to testify even though her testimony would have impeached Myers
since her version of the origin of the guns conflicted with Myers' testimony. Counsel stated that he
wanted her to testify. At trial, Rounsavall said she would invoke her Fifth Amendment right to
decline to answer questions if called to testify. Counsel did not call her to the witness stand.

 LaJuanda Lacy, Rounsavall's appointed counsel, testified at the hearing on Appellant's
motion for new trial. She said that after speaking to the prosecutor, she advised Rounsavall not to
testify at Appellant's trial. She explained that the prosecutor told her he could seek an indictment
against Rounsavall. She specifically noted that he did not say that he would indict her, only that he
could.

 Rounsavall testified that she alone rented the house. She explained that the two weapons
found in the house at the time of Appellant's arrest were collateral for a loan she made to Myers the
previous November. She said Appellant did not have possession of those, or any other, guns and she
never saw him shooting guns at Allen's house. She testified that both Appellant's counsel and Lacy
advised her not to testify at the trial. However, on redirect by Appellant's counsel, she stated that
she based her decision not to testify on what Appellant's counsel told her.

 This record does not establish an actual conflict of interest. At no time did Appellant's trial
counsel represent Rounsavall. He made comments to her regarding whether she should testify
considering the circumstances. Her court appointed attorney was of the same opinion as Appellant's
counsel. Although Appellant's counsel ultimately decided not to call Rounsavall, he maintained that
he wanted her to testify because he thought she could provide exculpatory evidence for his client. 
It was Rounsavall's decision to invoke her Fifth Amendment privilege against self incrimination. 
Her constitutional privilege against self incrimination overrides Appellant's constitutional right to
compulsory process of witnesses. Ellis v. State, 683 S.W.2d 379, 383 (Tex. Crim. App. 1984).
Further, Appellant did not have the right to have Rounsavall invoke the Fifth Amendment privilege
in the presence of the jury. Id. Therefore, although Appellant's trial counsel did express his opinion
to Rounsavall that testifying might lead to an indictment and he did choose not to call her to testify,
these acts do not constitute making a choice between advancing Appellant's interest in a fair trial
and advancing her interests. Appellant has not established that his counsel actively represented
conflicting interests. Therefore, Cuyler does not apply and prejudice is not presumed. Cuyler, 446
U.S. at 349-50, 100 S. Ct. at 1719.

 Applying the Strickland test, we now consider the remainder of Appellant's ineffective
assistance arguments. We begin with a strong presumption that counsel's challenged actions were
sound trial strategy. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Claims of
ineffective assistance of counsel must be supported by the record. See Mercado v. State, 615 S.W.2d
225, 228 (Tex. Crim. App. [Panel Op.] 1981). 

 If Rounsavall had testified at trial, she would have said she alone rented the house on
Highway 155, she was holding the guns as collateral for a loan to Myers, and Appellant never
possessed those guns or any other guns. The owner of the house would have testified that
Rounsavall was the sole lessee. Ronald Duncan, a criminal investigator for the Rusk County
Sheriff's Department, testified at the hearing that he recovered the shotgun found at the time of
Appellant's arrest as part of an investigation into some Rusk County burglaries. He said Rounsavall
told him she was holding the guns as collateral for a loan to Myers. 

 Rounsavall's explanation of the origin of the guns would have impeached Myers, possibly
weakening Appellant's case. With the exception of Rounsavall's statement that Appellant was never
in possession of any guns, the remainder of the proffered testimony is irrelevant and therefore
inadmissible. Tex. R. Evid. 402. We do not fault counsel for failing to offer inadmissible evidence. 
Furthermore, ineffective assistance is not established where proffered testimony is not beneficial. 
See Wilkerson v. State, 726 S.W.2d 542, 551 (Tex. Crim. App. 1986). With regard to Rounsavall's
statement that she had never seen Appellant in possession of any guns, that testimony would have
been duplicative of testimony by Appellant's two witnesses. Finally, that Rounsavall may have been
threatened with prosecution is a complaint of prosecutorial misconduct which does not implicate
ineffectiveness of defense counsel. Appellant has not shown that trial counsel's representation fell
below an objective standard of reasonableness. To the extent it may have been error not to have
Rounsavall testify that she had never seen Appellant in possession of any guns, Appellant has not
shown a reasonable probability that, had that statement been before the jury, the results of the
proceedings would have been different. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064. 
Therefore, Appellant has not shown that he received ineffective assistance of counsel and the trial
court did not abuse its discretion in denying Appellant's motion for new trial. We overrule
Appellant's fourth issue.


Conclusion

 The evidence is both legally and factually sufficient to support Appellant's conviction for
unlawful possession of a firearm by a felon. Further, the trial court did not err in failing to grant
Appellant's motion for new trial which was based on a claim of ineffective assistance of counsel. 
Therefore, we affirm the trial court's judgment.

 JAMES T. WORTHEN 

 Chief Justice


Opinion delivered February 5, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.





(PUBLISH)









COURT OF APPEALS


TWELFTH COURT OF APPEALS DISTRICT OF TEXAS


JUDGMENT



FEBRUARY 5, 2003



NO. 12-00-00270-CR



DAVID GRANTHAM,


Appellant


V.


THE STATE OF TEXAS,


Appellee







 Appeal from the 114th Judicial District Court


 of Smith County, Texas. (Tr.Ct.No. 1140197-00)








 THIS CAUSE came to be heard on the appellate record and briefs filed
herein, and the same being inspected, it is the opinion of this Court that there was no error in the
judgment.

 It is therefore ORDERED, ADJUDGED and DECREED that the judgment
of the court below Be In All Things Affirmed and this decision be certified to the court below
for observance.

 James T. Worthen, Chief Justice.

 Panel consisted of Worthen, C.J. and Griffith, J.













THE STATE OF TEXAS


M A N D A T E


TO THE 114TH JUDICIAL DISTRICT COURT OF SMITH COUNTY, GREETINGS:


 Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 5th
day of February, 2003, the cause upon appeal to revise or reverse your judgment between


DAVID GRANTHAM, Appellant



NO. 12-00-00270-CR and Tr. Ct. Case Number 1140197-00



Opinion by Chief Justice James T. Worthen.



THE STATE OF TEXAS, Appellee



was determined; and therein our said Court made its order in these words:

 THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the
same being inspected, it is the opinion of this Court that there was no error in the judgment.


 It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court
below Be In All Things Affirmed and this decision be certified to the court below for
observance.


 WHEREAS, YOU ARE HEREBY COMMANDED to observe the foregoing order of said
Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things
have it duly recognized, obeyed, and executed.


 WITNESS, THE HONORABLE JAMES T. WORTHEN, Chief Justice of said Court of
Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler,
this the ______ day of __________________, 200_.


 CATHY S. LUSK, CLERK



 By:_______________________________

 Deputy Clerk